In re Bradford A. SHAHEEN, Debtor.

HONG KONG DEPOSIT AND GUARANTY COMPANY LIMITED, Michael J. Johnson and Eoghan M. McMillan, as Liquidators of Hong Kong Deposit and Guaranty Company Limited, Bil (Vila) Bank Limited, and Stanley Uren, as Liquidator of Bil (Vila) Bank Limited, Plaintiffs–Appellees,

v.

Bradford A. SHAHEEN, Defendant–Appellant.

No. 89 Civ. 248 (PKL).

United States District Court, S.D. New York.

March 1, 1990.

---

Ballon, Stoll & Itzler, New York City (Burton D. Strumpf, Bruce Gordon, Joseph Bartfield, of counsel), for defendant-appellant.

Cleary, Gottlieb, Steen & Hamilton, New York City (George J. Grumbach, Jr., Thomas J. Moloney, Mark P. Friedman, of counsel), for plaintiffs-appellees.

## Opinion and Order

LEISURE, District Judge.

Appellant comes before the Court seeking reversal of a judgment entered by Chief Judge Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York on October 25, 1988. In that judgment, the Bankruptcy Court declared that the $3,496,423.69 debt of defendant-appellant, Bradford A. Shaheen, to plaintiffs-appellees, Hong Kong Deposit and Guaranty Company Limited, is not dischargeable. Shaheen's liability for the above sum was adjudicated in a 1985 judgment awarding principal and accrued interest.[1] The Bankruptcy Court found on the basis of the parties' memoranda of law and the evidence presented at a trial held on August 15 and 16, 1988, that this debt was incurred by false pretenses, false representations and actual fraud, and is therefore, non-dischargeable under the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).

Pursuant to 28 U.S.C. § 158(a), the Court has jurisdiction to hear this appeal and review the findings of the lower court.

## BACKGROUND

The instant appeal arises out of two 1981 loan agreements between appellant-defendant, Bradford A. Shaheen ("Shaheen"), the borrower, and appellee-plaintiff, Hong Kong Deposit and Guaranty Company Limited ("HKDG"), the lender. HKDG was a registered deposit-taking company, incorporated under the laws of Hong Kong, which formerly engaged in wholesale banking. (PTO ¶ 1).[2] Appellees Michael J. Johnson

---

1. *See Hong Kong Deposit and Guaranty Co. v. Hibdon,* 611 F.Supp. 224 (S.D.N.Y.1985).

2. PTO refers to Pre–Trial Order, Facts Not in Dispute.

and Eoghan M. McMillan were appointed joint liquidators of HKDG pursuant to an order of the Supreme Court of Hong Kong dated April 11, 1983. (PTO ¶¶ 2,3). At the time of the transaction at issue in this appeal, Shaheen was the President of HKDG, a member of its Board of Directors, and the record owner of 50% of the outstanding shares of HKDG. (PTO ¶¶ 12,-14).

Plaintiff-appellee BIL (Vila) Bank Limited is incorporated under the laws of the Republic of Vanuatu and was also formerly engaged in the business of wholesale banking. (PTO ¶ 4). Plaintiff-appellee Stanley Uren is the Official Receiver in Companies Liquidation of the Republic of Vanuatu and became provisional liquidator of BIL (Vila), pursuant to an order of The Supreme Court of the Republic of Vanuatu dated May 25, 1983. (PTO ¶ 5).

In November 1981, Shaheen travelled from New York to Hong Kong in order to obtain a $1,800,000 loan, either from HKDG or Tetra Finance (HK) Limited ("Tetra"), another deposit-taking company. Shaheen claims the money was to be used to satisfy an outstanding judgment against his father, John M. Shaheen. (PTO ¶¶ 16,-17). On or about November 12, 1981, Shaheen signed a letter addressed to HKDG instructing it to withdraw $1,200,000 from its call deposit with Tetra (PTO ¶ 16), and advance that sum to him. (PTO ¶ 17). The letter which Shaheen signed stated: "I have already informed Mr. Jean Patry and obtained his consent to the said instructions." (PTO ¶ 18; Plaintiffs' Exhibit ("Trial Ex. 2")). Jean Patry ("Patry") was the record owner of the remaining 50% of the outstanding shares of HKDG. (PTO ¶ 13). Shaheen has admitted that his representations to HKDG that he had informed Patry of the advance and obtained his consent were false. (PTO ¶ 19; Tr. p. 61).[3] Shaheen was aware that HKDG would not have released the funds to him unless it was guaranteed that Patry was informed and consented to Shaheen's plan. (Tr. p. 62).

Relying on Shaheen's representations, HKDG advanced Shaheen $1,219,633.33. (PTO ¶ 22; Trial Ex. 12). On or about November 13, 1981, Shaheen signed a promissory note indicating that he "irrevocably and unconditionally promised to pay" on the note by December 14, 1981. (PTO ¶ 21; Trial Ex. 4). This transaction arose pursuant to a letter agreement of November 12, 1981 between Shaheen and HKDG. (PTO ¶ 20; Trial Ex. 3). Shaheen knew that his representation that he would repay the loan was false at the time of making it. At trial Shaheen stated that "[he] never intended" to repay the loan. (Tr. p. 83). The Bankruptcy Court held that this representation evidenced the requisite intent to deceive necessary to claim an exemption from discharge. The Bankruptcy Court also held HKDG's reliance on Shaheen's representations that he obtained Patry's consent, and that he intended to repay the loan, to be reasonable.

On or about December 2, 1981, Shaheen executed a second letter asserting that he had informed and obtained consent from Patry in order to secure a second loan in the amount of $600,000. (PTO ¶ 25; Trial Ex. 7). On December 4, 1981, Mr. Shaheen signed another promissory note for $614,-250.00, which was to come due on January 22, 1982. He thereby represented that he would repay the said sum, knowing that this representation was false. The lower court found this false promise to evince an intent to deceive, and held HKDG's reliance on it to be reasonable. (PTO ¶ 28; Trial Ex. 9).

On or about December 4, 1981, Shaheen executed an addendum to the letter agreement between Shaheen and HKDG, providing an extension on the due date of the first loan to January 22, 1982, and increasing the debt on that loan to $1,244,737.45. Shaheen again agreed "irrevocably and unconditionally" to repay this loan by January 22, 1982. (PTO ¶ 24; Trial Ex. 6). Shaheen knew that his representation was false at the time it was made. (Tr. p. 83). The Bankruptcy Court held that Shaheen

---

**3.** Tr. refers to trial transcript from trial held before Judge Burton R. Lifland, United States Bankruptcy Court for the Southern District of New York, on August 15, and 16, 1988.

intended to deceive HKDG with this false representation, and that HKDG reasonably relied on Shaheen's promise when altering the terms of their agreement as well.

Shaheen has never paid any of his outstanding debts to HKDG, even though plaintiffs won a summary judgment against him in August, 1985. (PTO ¶ 30, 32–35). The 1985 judgment was amended to reflect additional interest and attorney's fees amounting to a total of $3,993,403.05. The Bankruptcy Court found that plaintiff had established that HKDG suffered damages as a result of its reasonable reliance on Shaheen's false representations.

After filing a voluntary Chapter 7 petition, Shaheen's debts were discharged under Bankruptcy Code § 727, other than the debt at issue.

## DISCUSSION

The Bankruptcy Court found that the above facts supported plaintiffs-appellees' argument that Shaheen's debt is nondischargeable under § 523(a)(2)(A). This section states that a debt will not be discharged to the extent the money at issue was obtained by "false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Court held that plaintiffs-appellees fulfilled their burden of proving that defendant's actions constituted the necessary elements of fraud. Under the Bankruptcy Code, these elements have historically included:

(1) the debtor made representations;

(2) the debtor knew the representations were false at the time they were made;

(3) the representations were made with the intent to deceive the creditor;

(4) the creditor relied on the representations;

(5) the creditor was injured by the representations and suffered damages as a result.

See In re Fosco, 14 B.R. 918, 920 (Bankr.D. Conn.1981); see also In re Phillips, 804 F.2d 930, 932 (6th Cir.1986); In re Kimsey,

761 F.2d 421, 423 (7th Cir.1985); In re McGrath, 7 B.R. 496, 498 (S.D.N.Y.1980).

With respect to the first element, Shaheen conceded that he twice represented in writing to HKDG that he had informed Patry of and obtained his consent to the $1,800,000 in loans. Shaheen also admitted that he signed three promissory notes. The Bankruptcy Court held that his signature on the notes was an implicit representation that he intended to repay HKDG.

As to the second element, the court concluded that when Shaheen made the representations regarding notification of Patry, he knew that they were false. Shaheen stated that at the time he signed the letters, he had neither informed, nor spoken with Patry. Shaheen's prior sworn testimony, confirmed by testimony at trial, revealed that these representations were false. Shaheen also testified that when he signed the promissory notes, he did not intend to repay HKDG.

The court also concluded that Shaheen's testimony and the surrounding circumstances give a clear indication that Shaheen intended to deceive HKDG. Shaheen knew that HKDG would not loan him the funds without Patry's knowledge and consent, and he offered no other plausible explanation at trial for his false representations.

The court found that HKDG relied on these false representations and that its reliance was reasonable. The court based reasonableness on Shaheen's 50% ownership and position of authority within HKDG. Although Shaheen tried to portray his role within HKDG as simply that of "figurehead" and a "messenger" for his father, the court found his position to be much more involved and authoritative, and therefore, HKDG's reliance was reasonable.

As to the last element, HKDG has not yet been repaid for the $1,800,000 advanced to Shaheen, although judgment was entered against Shaheen for this sum in 1985. That judgment now totals $3,993,403.05, exclusive of interest since its entry. Thus, HKDG was injured as a result of Shaheen's false representations.

**52**

Appellant contests the Bankruptcy Court's finding that all of the required elements of fraud were established by plaintiffs. Appellant particularly contests the court's findings with respect to the elements of (1) intent to deceive and (2) reasonable reliance.

The established standard for this Court's review of the findings of fact of a bankruptcy proceeding is set forth in Bankruptcy Rule 8013. That rule states: "Findings of fact ... shall not be set aside unless clearly erroneous...." The "clearly erroneous" standard is amply supported by ensuing case law. *See Manville Forest Products Corp. v. Gulf States Exploration Co.*, 896 F.2d 1384, 1388 (2d Cir.1990); *Brunner v. New York State Higher Educ. Services, Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *Truck Drivers Local 807 v. Carey Transportation, Inc.*, 816 F.2d 82 (2d Cir. 1987); *In re Men's Sportswear, Inc.*, 834 F.2d 1134 (2d Cir.1987); *In re Chin*, 47 B.R. 894, 897 (S.D.N.Y.1984).

In addition, the Supreme Court has ruled that when a determination by a trial court is based on credibility of witnesses, the reviewing court should show even greater deference to the conclusions of the lower court judge. *See Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (discussing Fed. R.Civ.P. 52(a)); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 223 (2d Cir.1957) (findings based in part on bankruptcy court's judgment of credibility of witnesses must be given great weight); Bankruptcy Rule 8013 ("due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses").[4]

■ Therefore, in order for an appellant who is challenging the court's findings of fact to prevail, the appellant must prove, not only that the bankruptcy court could have reached another conclusion, but that "a mistake has been committed" by the lower court on the entire evidence. *United*

*States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1139 (2d Cir. 1987).

■ Appellant contends that the Court should review the lower court's findings regarding Shaheen's intent to deceive the HKDG's reasonable reliance under a standard of clear and convincing evidence. Appellant requests this standard because he argues that these issues are findings of law rather than findings of fact. The Court cannot accept this assertion. "Questions concerning intent and reliance are questions of fact, and, thus, the bankruptcy court's findings on these issues are subject to appellate review under the clearly erroneous standard." *In re Vandergrift*, 35 B.R. 76, 78 (Bankr.D.Md.1983) (citation omitted); *accord In re Wingfield*, 15 B.R. 647, 649 (W.D.Okla.1981).

■ After examining the record in light of the clearly erroneous standard of review, the Court concludes that the Bankruptcy Court had sufficient evidence before it to support its finding with respect to Shaheen's intent to deceive HKDG. The record reflects that Shaheen made admittedly false statements on numerous occasions in order to secure a loan from HKDG. Shaheen knew that without these false representations, he would not have been able to obtain the soughtafter funds. The Court holds that this evidence suffices to satisfy a clearly erroneous standard of review.

Shaheen asserts that when he executed the letters regarding notification of Patry, he thought that a third party had informed Patry of his attempt to secure a loan from HKDG. He further asserts that because of this good faith belief, he lacked the requisite intent to deceive HKDG. However, the letters to HKDG indicate that Shaheen had personally spoken with Patry and obtained his consent to the loans which is materially false. Therefore, even if Sha-

4. The same standard of review which is granted to the findings of fact of a district judge under Rule 52(a) is given to the findings of a bankruptcy judge under Bankruptcy Rule 8013. *See* 9 L. King, *Collier on Bankruptcy* ¶ 8013.02 at 8013–2 (15th ed. 1988).

heen believed that a third party informed Patry, his misrepresentations demonstrate a reckless disregard for the accuracy of his statements which constitutes intent to deceive within the meaning of § 523(a)(2)(A). *See In re Archer,* 55 B.R. 174, 180 (Bankr. M.D.Ga.1985); *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985); *In re Ballard,* 26 B.R. 981, 986 (Bankr.D.Conn.1983).

■ In addition, the Court notes that an intent to deceive can be logically inferred from a defendant's false representations which the debtor knows will induce another to make a loan. *See In re Kimzey,* 761 F.2d 421, 424 (7th Cir.1985). Furthermore, "intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender." *In re Schlickmann,* 6 B.R. 281, 282 (Bankr.D.Mass. 1980); *accord In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *Regency Nat'l Bank v. Blatz,* 67 B.R. 88, 91 (E.D.Wis. 1986); *In re Sarkin,* 76 B.R. 24, 26–27 (N.D.N.Y.1984).

Furthermore, a conclusion regarding intent is one wherein the bankrupt's credibility is a substantial factor. *See In re Nelson,* 561 F.2d 1342, 1347 (9th Cir.1977); *In re Taylor,* 514 F.2d 1370 (9th Cir.1975). The Bankruptcy Court found that Shaheen's testimony was inconsistent with the other evidence, was contradicted by prior sworn testimony, and was "seriously lacking in credibility." (Findings of Fact and Conclusions of Law p. 14). As set forth above, when a trial court's determination rests in part on the credibility of the witnesses, the reviewing court must show even greater deference to the trial court's findings. *See Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.,* 249 F.2d 221, 223 (2d Cir.1957); Bankruptcy Rule 8013. Therefore, where the law calls for a showing of great deference to the trial court's findings, and the record supports that finding, as in the instant case, the Court has no basis to reverse the conclusion that Shaheen intended to deceive HKDG.

■ The question as to whether appellee acted reasonably in relying on appellant's representations is also an issue of fact. *See Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490, 493 (6th Cir. 1986) (bankruptcy court's finding of no reasonable reliance held clearly erroneous); *In re Phillips,* 804 F.2d 930, 933 (6th Cir.1986) (reasonableness must be determined by evaluating all the facts and circumstances). The evidence shows that Shaheen was the President of HKDG, a member of its Board of Directors and a 50% shareholder of HKDG. The Bankruptcy Court concluded that because of Shaheen's ownership, directorship and managerial position within HKDG, it was reasonable for HKDG to rely on his representations. This conclusion is well founded and satisfies scrutiny under the clearly erroneous standard. The law leans toward a finding of reasonable reliance where there is an ongoing fiduciary relationship between a borrower and a lender. *See In re Phillips,* 804 F.2d 930, 933 (6th Cir.1986) (unlike cases involving commercial lenders, evidence of longstanding relationship "weighs heavily in favor of finding reasonable reliance"); *In re Jones,* 88 B.R. 899, 904–05 (Bankr.E.D.Wis.1988) (creditor's reliance on debtor's false financial statement without further investigation was reasonable where debtor had longstanding relationship with creditor prior to default). The Court recognizes that reasonableness is a low hurdle for the creditor to meet, and is intended as an obstacle only for creditors acting in bad faith. *See In re Martin,* 761 F.2d 1163 (6th Cir.1985).

## CONCLUSION

For the above stated reasons, the Findings of Facts and Conclusions of Law of the Bankruptcy Court are affirmed.

SO ORDERED.