**In the Matter of Edward & Diane CHRISTIAN, Debtors.**

**Bankruptcy No. 84–06172.**

United States Bankruptcy Court,
D. New Jersey.

July 15, 1985.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Frank J. Vecchione, Newark, N.J., for Union Chelsea Bank.

Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein by Robert A. Baime, Newark, N.J., for debtors.

Wolff & Samson by William S. Katchen, Roseland, N.J., for Bankers Trust.

Beggans & Kellogg by James P. Beggans, Jr., Newark, N.J., for The First Women's Bank.

William F. Tuohey, Hawthorne, N.J., for trustee.

Joseph DiPasquale, trustee.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

This matter comes before the Court on a motion by Union Chelsea Bank to request that the Court hold a hearing in order to determine whether or not this matter should be dismissed for the substantial abuse of the Bankruptcy Code, pursuant to § 707(b).

Factually, the parties have deferred the discussion of the fact pattern of this case, and this Court is not called upon to determine whether the conduct of the debtors constitutes a substantial abuse, but only to deal with the threshold question of whether or not the Court can respond to the suggestion of, or the request of, Chelsea Bank to hold the hearing required by that section of the Code in order to make such determination.

The case is very slightly broadened by the urging of the moving party, as well as the United States Trustee, to have the designated trustee or the U.S. Trustee himself, pursue this motion.

The debtors assert that Union Chelsea has no standing to proceed, and also asserts that the trustee has no standing.

This case arises under 11 U.S.C. § 707(b) which states:

> After notice and a hearing, the Court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this Chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

In all statutory interpretation, the law requires an explanation of the plain language of the statute. The United States Supreme Court has stated that that has always been the law and continues to be the law. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *United States v. Troxler Hosiery Company, Inc.*, 41 B.R. 457 (Bankr.D.C.N.C.1984).

### I.

We must first, then, ask who is a party in interest, and all concede that Union Chelsea is a party in interest. Part of the argument before this Court is whether or not the trustee is a party in interest. This question can be answered in many different ways and has been answered in many different ways within the Bankruptcy Code itself. The role and capacity of a trustee "is the representative of the estate." 11 U.S.C. § 323(a). The trustee as a representative of the estate is a party in interest. He or she must be a party in interest in that circumstance.

Bankruptcy Rule 2001 concerns notice to creditors, equity security holders, and the United States. The rule goes on to specifically indicate that notice to parties in interest includes the debtor, the *trustee*, all creditors, and the indenture trustee. (emphasis added) They are parties in interest there.

Bankruptcy Rule 6009 says:

> "With or without Court approval, trustee or debtor in possession may prosecute or enter an appearance and defend any pending action or proceeding in behalf of the estate before any tribunal."

In order to be authorized to proceed to prosecute or enter an appearance and one must be considered a party in interest. For many purposes, therefore, the trustee is a party in interest. For other purposes, the trustee is neutral. This does not mean that calling someone a trustee is to be taken as the use of a perjorative term. A trustee is one who has a specific role to play in any given proceeding. The trustee appeared at the 341 meeting for the United States Trustee and at that meeting conducted an examination of the debtor. Whose side was the trustee on?

It is clear that the trustee is a party in interest who is looking for that which will preserve the estate as against the debtor in some situations, in favor of the debtor in other situations. The role may change. The trustee is not guilty of a conflict, but *is* a party in interest. The distinction sought to be made between the trustee and the moving parties here on the basis of a party in interest, simply does not stand up.

### II.

There are no cases on point to the main issue. The 1984 Amendments to the Code went into effect on October 8, 1984, and, there have been no cases that can help. *In re Bryant*, 12 Bankr.Ct.Dec. (CRR) 565 (Bankr.W.D.N.C.1984) is an interesting case, but in that particular circumstance the Court acted on its own motion. There is no indication in the *Bryant* case that the Court relied on any information that could be deemed either to be a request or a suggestion of any party. For the narrow issues that concern us here, we cannot rely upon the *Bryant* case. The same thing is true of the case cited by counsel of *In re Wright*, 48 B.R. 172 (Bankr.E.D.N.C.1985). Again, it appears from a reading from the *Wright* matter, that the court acted on its own, *sua sponte*.

Furthermore, the Supreme Court has yet to promulgate any rules that would offer

procedural guidance in implementing this section.

What the statute says specifically is that this type of motion, or this type of action, is not to be brought at the request or suggestion of any party in interest. It would be helpful if we had legislative history, but there is no legislative history for the 1984 amendments. It is interesting to look back at the legislative history of the 1979 Code.

There is extensive legislative history in the form of Committee Reports, and 102 of that history of the Code specifically states:

> (T)he phrase 'on request of a party in interest' ... is used in connection with an action that the court may take in various sections of the Code. *This phrase is intended to restrict the court from acting sua sponte.* Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provisions in question ... (emphasis added)

H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, P. 5787; 124 Cong.Rec. II. 11,090 (Sept. 28, 1978); S. 17.047 (Oct. 6, 1978).

Congress was clear that when it said "on request of a party in interest", it prohibited the court from acting *sua sponte.* A very simple reversal of that term leads to the conclusion that when it says not at the request of a party in interest, it is specifically directing the Court to act *sua sponte.* As pointed out above, the moving party is such a party in interest.

### III.

Counsel for the debtors suggest that this may even have tainted the entire issue for the future in this case, and suggests that it is an absurd result. It is not an absurd result. The analogy discussed in oral argument, that the fruits of the tree are tainted, is in fact appropriate in this case. Pervasive throughout this entire opinion is the

very purpose of the Bankruptcy Code. The very purposes of the bankruptcy courts are to grant relief to the debtors and to give debtors a fresh start.

There are limits to legislative history. Counsel, both in their briefs and their oral arguments, have indicated that this statute was as a result of compromise, or it might as well have been the result of compromise. By way of illustration and not because it is binding on this Court, it is interesting to note the statement on the floor by Senator Howard Metzenbaum, in connection with this particular amendment, wherein he said:

> I am extremely pleased that this bill prohibits creditors from filing motions, attempting to deny bankruptcy relief to individuals because of substantial abuse.... Only a Bankruptcy Court acting on its own initiative can dismiss a case involving substantial abuse. This will preclude creditors from making bankruptcy too expensive for the debtor, by filing harassing motions alleging abuse.

130 Cong.Rec. H1810–1811 (daily ed. June 19, 1984) (statement of Sen. Metzenbaum).

That Statement by Senator Metzenbaum is not binding on this Court, but it is at least one Senator's view of what he was voting upon.[1]

Senator Metzenbaum's comments do, however, very specifically suggest what might happen if this creditor were permitted to dismiss a Chapter 7 proceeding. It seems that the flood gates could open every time there is an adversary proceeding concerning the dischargeability of a debt or the granting of a discharge. If the creditor lost on substantive basis or lost for failure to file it within time, he would get another bite at the apple. The creditor would get a hearing on whether or not there has been substantial abuse, whether the creditor does it by bringing it on its own accord, or he gets the United States

---

**1.** The particular prohibition in using such a statement as evidence of legislative intent has been reemphasized by Justice Rehnquist recent-

ly in *Garcia v. United States,* 469 U.S. ——, 105 S.Ct. 479, 483, 83 L.Ed.2d 472, 478 (1984).

Trustee to do it. Even if the creditor gets the trustee to do it, it would be a problem, and in specific events such as in this case, a reaction similar to the letter from First Women's Bank.[2]

The moving party argues that this section would constitute, if interpreted rigidly, an absurd result, and the law prohibits an interpretation of a statute which will lead to an absurd result. In examining the consequences, it is clear that the result of a rigid interpretation is not absurd. It may well be that the tracing of this section through the various marked up versions of the various legislative permutations and combinations will show some inconsistency with the original intent. In fact, there has been a suggestion in oral argument that that was, in fact, the case.

The statute as it presently exists has not, in fact, however been denuded of all meaning. As presently written, the Court, trying to fit a case into the rather rigid area of dischargeability, might find itself with some conclusion that the debtor has abused the process, but not find the specifics of non-dischargeability. Under Chapter 11 and under Chapter 13, the Court has to make a finding that there has been, in effect, no abuse of the Bankruptcy Code. 11 U.S.C. § 1129(a)(3) and 11 U.S.C. § 1325(a)(3). In both of these sections, the statute specifically compels the Court to make some generalized good faith finding and, absent such a finding, the result is a requirement that the plan be disapproved.

Interestingly enough, this case does not deal with a failure to grant the discharge (which is really not apposite in the 11 and 13 context). It emphasizes the difference between a dismissal and denial of discharge. The failure to approve a plan will not preclude a future discharge. So, it would seem that the three sections work

their way together. The Court might very well find in the most unusual of cases recognizing the purpose for which the statute was enacted, and considering how the entire Bankruptcy Code operates, as well as the presumption specifically set forth in § 707(b), just that occasional situation which requires the use of this section.

At oral argument, the Court specifically asked counsel to postulate a situation in which there might be a violation of the substantial abuse section of the statute, and at the same time, conduct which would result in either a failure to grant a discharge in general or of a particular debt. Although he was unable to do so, such a result is not impossible to conjure up.[3]

There are very rigid rules concerning dischargeability on both aspects, and the Court has a great deal of latitude. In a dischargeability complaint case, the Court can rely on the inherent powers under 11 U.S.C. § 105 and deny a discharge where there's been an abuse, however, and this is the stated remedy to creditors. It is very important that that stated remedy have specific statutory consequences for its own abuse and that is, the provisions of 11 U.S.C. § 523.

The Court can impose sanctions, penalties, attorney fees and costs where the *creditor* is guilty of an abuse, however, in a consumer case particularly under § 523. 11 U.S.C. § 523. If the use of 707(b) is permitted, then the creditor or the trustee can bring an action without having to consider whether or not there is any penalty for being wrong, and in this particular case, that that is exactly what happened.

The time within which counsel for Union Chelsea could have brought an action concerning dischargeability has passed, and no such action was brought. The remedy is clear. There has been a suggestion that

---

**2.** First Women's Bank has pending an adversary proceeding to determine that their debt is non-dischargeable. It wrote a letter to the Court in support of Union Chelsea's motion. If the Court had already disposed of their motion and denied it, they would now have that second bite at the apple.

**3.** Actions which defeat the position of a divorced or separated spouse but do not constitute specific areas of nondischargeability, for example, or multiple borrowings without the use of fraud or misrepresentation could shock the conscience of the Court without rising to the level of a ruling on dischargeability.

this statute is meaningless unless other principles are engrafted onto it. This Court does not have the power and authority to engraft a whole new concept of law on a statute. It can interpret ambiguities.

### CONCLUSION

WHEREFORE, THE COURT CONCLUDES that a fair reading of 707(b) of the Bankruptcy Code yields no ambiguity whatsoever, that only the Court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case.

The motion brought by Union Chelsea, both with respect to its own action and the action of the trustee, is denied. The debtor shall submit the appropriate order.